FILED
U.S. District Court
District of Kansas

NOV 04 2026

Clerk, U.S. District Court
By [signature] Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CODY HELMERS,**

*Plaintiff,*

**Vs.**

**THE CITY OF NEWTON, KANSAS;**
**HARVEY COUNTY, KANSAS;**
**MARILYN M. WILDER**, *Individual Capacity;*
**MICHAEL E. LLAMAS**, *Individual Capacity;*
**JASON R. LANE**, *Individual Capacity;*
**PHILLIP B. JOURNEY**, *Individual Capacity,*

*Defendants.*

**Case No.** 6:26-cv-1405-DDC-BGS
(To be assigned by Clerk)

**INITIAL CIVIL ACTION**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND DEMAND FOR JURY TRIAL

*(PURSUANT TO 42 U.S.C. §§ 1983, 1985)*

### I. JURISDICTION AND VENUE

1. This Court possesses original subject-matter jurisdiction over this federal civil rights controversy pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a), as this action seeks damages and declaratory relief for the intentional deprivation of fundamental liberties guaranteed under the Fourth, Sixth, and Fourteenth Amendments, brought under the explicit remedial channels of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

2. Venue is proper within the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the operative events, electronic record suppressions, and document

fabrications giving rise to these constitutional torts occurred directly within the boundaries of this judicial district.

## II. THE PARTIES AND COLOR OF LAW ALLEGATIONS

3. Plaintiff Cody Helmers is a citizen of the United States and a resident of the State of Kansas, appearing *pro se* pursuant to 28 U.S.C. § 1654. The Plaintiff maintains full standing to bring this action to protect his fundamental personal liberties and parental rights secured directly under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

4. Defendant City of Newton, Kansas is a municipal corporate entity acting under color of local law, whose final administrative and court policymakers implemented the unconstitutional warrant-alteration customs detailed herein.

5. Defendant Harvey County, Kansas is a political county subdivision acting under color of state law. The corporate Defendant's final sheriff, court clerk, and detention facility administrators directly implemented, executed, and ratified an unconstitutional administrative custom consisting of:

   - The intentional withholding and failure to docket mandatory judicial records within the centralized state database mainframe to deliberately insulate extrajudicial dockets from public and supreme review; and
   - The unauthorized, non-consensual administrative cancellation and electronic reversal of contractually satisfied appearance bonds to systematically subvert valid bail commands and enforce an unfiled custodial containment track against the Plaintiff without due process of law.

6. Defendants Marilyn M. Wilder, Michael E. Llamas, Jason R. Lane, and Phillip B. Journey are civil officers of the State of Kansas, holding or formerly holding titles as district court judges

within the State of Kansas judicial branch. The individual Defendants are bound by a mandatory Article VI Oath to support the United States Constitution as the Supreme Law of the Land, alongside an additional Article 15, Section 14 Oath under the Kansas Constitution to faithfully execute the duties of office. At all times relevant, each individual defendant acted under color of state law, utilizing the administrative power of their offices to execute the unfiled record tracks detailed herein. Each is sued strictly in their individual and personal capacity for their direct participation in these constitutional violations, completely divesting them of absolute immunity under *Forrester v. White*, 484 U.S. 219 (1988).

## II. STATEMENT OF FACTUAL CLAIMS AND PERSONAL INVOLVEMENT

### COUNT I: EXTRAJUDICIAL NO-BOND INTERCEPTION AND TOTAL ABSENCE OF ALL JURISDICTION

7. On May 14, 2025, City of Newton municipal police personnel completely bypassed the public Court Clerk's filing window and entered the private administrative chambers of Defendant Judge Michael E. Llamas (Exhibit A-2). Before any formal criminal complaint, case file, or automated case management number electronically or legally existed on the state judicial database mainframe, Defendant Llamas entered into an ex-parte verbal agreement with law enforcement to grant an unrecorded, non-docketed "No-Bond Hold" over the Plaintiff's physical body. Defendant Llamas issued this extrajudicial directive with actual, subjective knowledge that no judicial case file had been opened, completely divesting his action of all regular adjudicative authority. This unrecorded verbal order was subsequently transcribed and enforced as an absolute custodial restriction onto the face of the Plaintiff's Pre-Booking Sheet (Exhibit D-1) by administrative booking personnel.

8. Because no criminal complaint or case file existed anywhere within the state judiciary system at

the time of the administrative directive, Defendant Llamas acted outside his judicial capacity and in the complete absence of all subject-matter and personal jurisdiction, as there was no active case over which judicial authority could attach. His unauthorized verbal chamber instruction constitutes an extrajudicial administrative directive rather than a lawful judicial act. Pursuant to the binding commands of the United States Supreme Court in *Forrester v. White*, 484 U.S. 219, 229 (1988), absolute judicial immunity protects only regular adjudicative courtroom acts, never an unrecorded chamber directive executed without an active, docketed case file. By executing this extrajudicial directive to bypass statutory booking boundaries and mandate an unfiled physical detention, Defendant Llamas stripped his action of all regular judicial character. This concerted mechanism initiated a continuous, multi-entity record concealment custom designed to withhold mandatory statutory notice from the Plaintiff. This joint participation represents an actionable conspiracy to deprive the Plaintiff of civil rights under color of law pursuant to 42 U.S.C. § 1983.

## COUNT II: LIABILITY FOR PREMEDITATED DOCUMENT ALTERATION AND WIDESPREAD CUSTOMS OF RECORD FABRICATION

9. To execute and maintain an un-docketed, extrajudicial detention track completely outside the public judicial record, Defendant City of Newton, Kansas, acting through its final municipal court policymaker, Judge Kelly Schodorf, implemented a permanent administrative custom to systematically manipulate and fabricate formal warrant instruments. As documented by the physical record, the Defendant's municipal court administration deployed a premeditated, multi-stage layout of document manufacturing. Specifically, Exhibit C-1 documents an unfiled, un-executed warrant draft that was pre-altered with the typed notation "*NO BOND APPROVED BY JUDGE VIA EMAIL*" before being placed into circulation, proving the Defendant City of

Newton pre-planned this lawless administrative restriction within its municipal offices prior to law enforcement deployment." This pre-altered instrument was purposefully matched against a conflicting baseline template, Municipal Warrant 1179 (Exhibit B-3), to strategically manipulate statutory bail boundaries and execute a coordinated cross-county seizure.

10. To permanently deprive the Plaintiff of his fundamental liberties, the Defendant's final administrative and clerical policymakers executed a material physical alteration on Municipal Warrant 24N2439. Municipal court personnel manually struck through the pre-printed, lawful statutory bond lines on the face of the circulating instrument and replaced them with a typed, ultra vires notation stating: "*NO BOND WARRANT APPROVED BY JUDGE VIA EMAIL*". This deceptive instrument was manufactured to mislead the administrative machinery of the detention facility, bypass non-discretionary statutory booking boundaries, and enforce an intentional withholding of mandatory notice over a pro se detainee possessing a clearly established right to bail. The execution of this unwritten, systemic municipal custom directly and proximately caused the Plaintiff's constitutional injury, resulting in a 205-day unlawful physical seizure and an ongoing, continuous constructive liberty restraint spanning from May 14, 2025, through the filing of this action. This custom permanently deprived the Plaintiff of his protected liberty without notice, an impartial tribunal, or a meaningful opportunity to be heard, establishing direct municipal corporate liability under 42 U.S.C. § 1983 pursuant to *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978).

## COUNT III: MUNICIPAL MONELL LIABILITY FOR ADOPTION OF EXTRAJUDICIAL PROCESS AND TWO-ENTITY CUSTODIAL ALIGNMENT

11. On May 16, 2025, a District Court warrant was issued setting the Plaintiff's appearance bond at a superior $25,000.00 cash or surety (Exhibit E-1). Following the Plaintiff's unlawful cross-county

physical seizure, the corporate Defendant Harvey County, Kansas, acting through its final sheriff and detention facility administrators, completely aligned its administrative operations with the City of Newton's unfiled restrictions to enforce an interlocking, two-entity custodial dragnet explicitly designed to circumvent valid bail commands.

12. On September 3, 2025, the Plaintiff contractually satisfied and fully executed the superior $25,000.00 District Court felony bond command (Exhibit E-2). In direct violation of the absolute bail guarantees of Section 9 of the Kansas Bill of Rights and the Due Process Clause of the Fourteenth Amendment, Harvey County detention personnel deployed an unauthorized administrative device to execute an unrecorded electronic reversal and cancellation of the vested liberty interest and approved appearance bond obligation (Exhibit G). This administrative mechanism was executed specifically to implement and enforce an un-docketed interagency email coordination track between municipal court policymakers and Defendant Judge Llamas, traveling directly from the face of the altered municipal warrant stating *"NO BOND WARRANT APPROVED BY JUDGE VIA EMAIL"* (Exhibit C-2) and manually transcribed onto the face of the Plaintiff's Pre-Booking Sheet: *"NO BOND - PER JUDGE LLAMAS"* (Exhibit D-1).

13. The corporate Defendant Harvey County's integration and enforcement of an unfiled municipal restriction constitutes an unconstitutional municipal custom carrying the force of law. By systematically adopting an extrajudicial chamber directive the corporate Defendant actively participated in a joint conspiracy establishing direct municipal corporate liability under 42 U.S.C. § 1983 pursuant to *Monell v. New York City Dept.of Social Servs.*, 436 U.S. 658 (1978).

**COUNT IV: THE EXTRAJUDICIAL ADMINISTRATIVE ASSIGNMENT BYPASS AND RECORD SUPPRESSION**

14.On August 11, 2026, the Plaintiff file-stamped a Verified Affidavit of Disqualification directed against Chief Judge Michael E. Llamas. Under the strict, non-discretionary command of K.S.A. 20-311d(c), the local Ninth Judicial District bench was instantly divested of all administrative authority over the case file, and the Chief Judge was legally commanded that he "*shall at once notify the departmental justice*" in Topeka to secure an independent, Supreme Court-authorized case assignment.

15.In deliberate defiance of this mandatory statutory command, and acting out of individual personal interest to isolate the record from outside Supreme Court review, Defendant Judge Marilyn M. Wilder executed an extrajudicial, non-docketed administrative reassignment to her immediate hallway peer, Defendant Judge Jason R. Lane. This unauthorized transfer represents a tacit admission of the affidavit's legal existence, yet it was executed in total absence of all jurisdiction to intentionally bypass the state Supreme Court's administrative oversight, conceal the jurisdictional collapse of the local district, and suppress public document visibility on the database portal (Exhibit K)

## COUNT V: THE UN-DOCKETED MANUAL ENFORCEMENT TRACK AND EXTRAJUDICIAL SUPPRESSION OF BAIL

16. Bypassing standard automated database tracking due to the unauthorized in-house transfer, Defendant Judge Jason R. Lane ran an un-docketed, manual paper track to execute an extrajudicial Order of Bond Forfeiture and for Bench Warrant (Exhibit O-2). Defendant Lane signed this manual instrument with actual, subjective knowledge of the Plaintiff's file-stamped Verified Affidavit of Disqualification (Exhibit K), in deliberate violation of the self-executing statutory stay mandated by K.S.A. 20-311e, which completely divested the lower court of administrative power to proceed or punish.

17. Under the controlling rules of *City of Neodesha v. Knight*, 226 Kan. 416 (1979), any administrative instrument executed in direct defiance of a statute divesting a tribunal of jurisdiction is a void nullity carrying zero legal force. This manual paper track relied on chronologically manipulated notices (Exhibits O-1 and O-3) featuring impossible timestamps to create a fraudulent appearance of due process. Defendant Lane signed the void paper warrant on September 9, 2026, at 2:58 PM, but intentionally withheld the entry from the public database for a 20-hour electronic blackout until September 10, 2026, at 11:28 AM.

18. Defendant Lane deployed this 20-hour digital database blackout to secretly transmit a void forfeiture notice to the Plaintiff's commercial bondsman completely hidden from public view (Exhibit L). Because a court speaks exclusively through its official records under State v. Royer, manufacturing an unrecorded "No-Bond" shortcut to threaten a citizen's physical liberty without a formal hearing, open record, or lawful entry constitutes an arbitrary deprivation of rights. By utilizing an unfiled administrative mechanism to override a valid appearance bond, Defendant Lane stripped his action of all judicial character, establishing direct individual liability for a violation of the Fourteenth Amendment and Section 9 of the Kansas Bill of Rights under 42 U.S.C. § 1983.

## COUNT VI: THE EXTRATERRITORIAL SEIZURE AND TERRITORIAL JURISDICTIONAL CONCESSIONS

19. As documented by the official Newton Police Department Investigative Report (Exhibit A-1), the municipal corporate Defendant possessed actual, subjective notice that it operated in total absence of territorial jurisdiction over the Plaintiff's body. On April 23, 2025, municipal law enforcement explicitly recorded a fatal jurisdictional concession on the face of the public ledger, writing: "*I informed Jade we did not have jurisdiction in Goddard and until Goddard PD or*

*another agency within that jurisdiction locates him, it was unfortunately a waiting game."*

20. Despite this explicit written concession, the corporate Defendant City of Newton, acting in a coordinated track with County Attorney Heather Figger, executed a material record fabrication to manufacture a false appearance of jurisdiction. As documented by the face of the Arrest Warrant (Exhibit E-1), state operators typed that the alleged offense occurred within Harvey County while simultaneously logging the Plaintiff's location at his residence within Goddard, Kansas (Sedgwick County). This fabricated instrument was deployed to execute an unauthorized cross-county boundary breach on May 14, 2025, to physically seize the Plaintiff's body within Sedgwick County.

21. Under the controlling rule of *State v. Sodders,* 255 Kan. 79 (1994), municipal officers possess zero authority to execute process or arrest citizens outside their strict statutory boundaries. The fatal defect of this cross-county transaction is recorded on the face of the Goddard Police Department Occurrence Report (Exhibit D-2), which explicitly registers and categorizes the Newton Police Department under the corporate operational profile of an external Commercial/ Business entity executing an extrajudicial body swap inside a commercial parking lot (Exhibit D-1). By utilizing an un-docketed cross-county swap to capture the Plaintiff's physical body in total absence of territorial jurisdiction, the corporate Defendants implemented a lawless administrative custom that directly violated the Plaintiff's Fourth Amendment right to be secure against unreasonable seizures, establishing direct municipal liability under 42 U.S.C. § 1983.

## COUNT VII: THE OVERARCHING INSTITUTIONAL CONSPIRACY AND VENUE-STEERING CUSTOM TO CONCEAL RECORDS

22. Pursuant to the joint participation standards established by the United States Supreme Court in *Dennis v. Sparks*, 449 U.S. 24 (1980), a civil official faces direct liability under Section 1983

when they utilize an informal administrative layout to deliberately hide public records and engineer a total deprivation of due process. As documented by the verified, authenticated transcription of Defendant Judge Phillip B. Journey (Exhibit I), the individual named Defendants implemented, executed, and ratified a widespread, multi-county custom of record concealment carrying the force of law across the Ninth and Eighteenth Judicial Districts.

23.Defendant Judge Journey explicitly detailed the operational mechanics of this concealment custom under a conscious meeting of the minds, logging the following precise evidentiary timelines on the face of Exhibit I:

- At Timestamp 13:47: Defendant Journey admits that family court actors cross county lines to manipulate territorial boundaries to hide files from the home court, stating: *"But it's not unusual for a PFA case to put an order on something that's counter-tuned. What's going on in the family law case. And so if they don't like what I do, they go get a PFA. I've even had them go to different counties and get PFAs. ...Like Newton."*
- At Timestamp 15:23–15:39: Defendant Journey explicitly identifies the destination and consequence of the concealment track to prevent any supreme review of the subject matter, admitting: *"And so the family law case is here, they'll go to Newton and get a PFA... It's just like when N.F... filed for divorce... two counties away. So nobody can find her file."*
- At Timestamp 17:26: Defendant Journey mandates absolute secrecy to protect the un-docketed tracking mechanism from judicial audit, commanding: *"Now, now, please, please... Don't talk to either of these people about anything I've talked to you about."*

24.This recorded institutional confession connects seamlessly to the extrajudicial administrative injuries executed against the Plaintiff within Harvey County. Following the Plaintiff's filing of a

Verified Affidavit of Disqualification, the local bench refused to notify the Departmental Justice in Topeka under K.S.A. 20-311d(c). Instead, they executed an unrecorded, manual paper transfer and an intentional 20-hour electronic database blackout (Exhibit O-2) to secretly transmit a void manual arrest order to the bondsman, completely hidden from public view.

25. The interlocking synchronization between the individual Defendants represents a continuous, bad-faith conspiracy specifically deployed to achieve a total notice blackout. By systematically withholding records to ensure that "nobody can find the file,"the Defendants permanently insulated a non-jurisdictional custodial track from supreme review, destroyed the Plaintiff's right to an impartial tribunal, and stripped him of his fundamental parental liberties under *Troxel v. Granville*, 530 U.S. 57 (2000), establishing an actionable deprivation of rights under 42 U.S.C. §§ 1983 and 1985(3).

## IV. CONSTITUTIONAL VIOLATIONS

### CLAIM I: DEPRIVATION OF THE FOURTH AMENDMENT RIGHT TO BE SECURE AGAINST UNREASONABLE SEIZURES

26. The Plaintiff incorporates and re-alleges paragraphs 1 through 25 as if fully set forth herein. The Fourth Amendment to the United States Constitution guarantees the absolute right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

27. The Defendant City of Newton, Kansas, Defendant Judge Michael E. Llamas, and participating municipal police personnel completely subverted this fundamental constitutional guarantee. Acting under color of law and in total absence of all territorial, personal, and subject-matter jurisdiction, the Defendants executed an unauthorized cross- county physical seizure and arrest of the Plaintiff's body across county borders. This unlawful seizure was followed immediately by

an un-docketed, extrajudicial verbal chamber hold ordered before an active criminal complaint, case file, or automated case management number electronically existed on the state database. Under the controlling rule of the United States Supreme Court in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), caging a citizen's body inside an unfiled record vacuum without an independent, open-court probable cause determination constitutes an unreasonable seizure *per se*, establishing direct corporate and individual liability under 42 U.S.C. § 1983.

## CLAIM II: STRUCTURAL COLLAPSE OF THE SIXTH AMENDMENT RIGHT TO COUNSEL AND IMPOSITION OF A HOSTILE TRIBUNAL

28.The Plaintiff incorporates and re-alleges paragraphs 1 through 25 as if fully set forth herein. The Sixth Amendment to the United States Constitution commands that in all criminal prosecutions, the accused shall enjoy the absolute right to have the assistance of counsel for his defense, which includes the co-equal, absolute statutory right to self-representation (*pro se*) pursuant to 28 U.S.C. § 1654.

29.The corporate Defendant Harvey County, Kansas, and Defendant Judge Jason R. Lane completely subverted this supreme constitutional mandate. Following the Plaintiff's formal open-court termination of all legal counsel and a subsequent judicial finding of competency, the Defendants actively forced an unwanted, non-responsive court-appointed attorney onto the Plaintiff's docket to create a fraudulent appearance of due process. Subsequently, Defendant Lane stepped completely off the electronic bench to execute a non-adjudicative, unfiled manual paper track and an intentional 20-hour electronic database blackout checked for the box of "Sentencing" (Exhibit O-2). Enforcing an extrajudicial sentencing track against a self-represented citizen while systematically blocking his ability to communicate with the record constitutes a structural Sixth Amendment collapse. This coordinated administrative

concealment strips the individual officials of all role-based immunity defenses under *Tower v Glover*, 467 U.S. 914 (1984), establishing an actionable deprivation of rights under 42 U.S.C. § 1983.

## CLAIM III: DEPRIVATION OF FOURTEENTH AMENDMENT DUE PROCESS AND PARENTAL LIBERTY

30. The Plaintiff incorporates and re-alleges paragraphs 1 through 25 as if fully set forth herein. The Due Process Clause of the Fourteenth Amendment to the United States Constitution strictly prohibits any state actor from depriving a citizen of life, liberty, or property without a meaningful notice, a fair hearing, and an opportunity to be heard. Under the landmark standard of the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 65 (2000), the fundamental liberty interest of a natural parent in the care, custody, and control of their children is the oldest and highest recognized liberty interest in American law.

31. Defendants Michael E. Llamas, Marilyn M. Wilder, Jason R. Lane, and Phillip B Journey, acting under color of state administrative and clerical custom, executed a synchronized, multi-county conspiracy to strip the Plaintiff of these protected liberties without due process of law. As established by the record, the Defendants systematically utilized un-docketed administrative tracks, unauthorized electronic bond transaction reversals (Exhibit G), and unrecorded hidden case transfers to implement an intentional, continuous notice blackout. This widespread data-concealment system was deployed for the bad-faith administrative objective of ensuring that "nobody can find her file," explicitly designed to physically cage the Plaintiff's body inside a 205-day custodial vacuum and maintain an ongoing 512-day constructive liberty restraint so he could not object while private co-conspirators finalized a fraudulent adoption track outside public view. Under *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974), when a state officer acts in a

manner violative of the Federal Constitution, they are stripped of their official character and subjected in their person to direct individual liability for compensatory and punitive damages under 42 U.S.C. §§ 1983 and 1985(3).

## V. PRAYER FOR RELIEF AND DEMAND FOR DAMAGES

WHEREFORE, Plaintiff Cody Helmers respectfully requests that this Court enter judgment in his favor and against each of the named Defendants, ordering the following relief:

**A. Declaratory Relief**: A formal judicial declaration that the Newton Municipal Court warrants, the Harvey County District Court bond forfeitures, the unfiled extrajudicial chamber holds, and the cross-county physical dockets are void *ab initio* for a complete and total absence of subject-matter and territorial jurisdiction;

**B. Injunctive Relief:** An immediate and permanent federal injunction restraining and enjoining the Defendants, their agents, and all joint state actors from enforcing the void September 9, 2026 manual paper arrest warrant, freezing all extrajudicial sentencing tracks, and commanding the immediate electronic deletion of the fraudulent bond forfeiture entries from the centralized database mainframe under the bad-faith exception to the federal abstention doctrine;

**C. Actual and Compensatory Damages:** An award of actual compensatory damages against all corporate and individual Defendants, jointly and severally, for the total economic destruction of the Plaintiff's commercial business infrastructure, contracting assets, and protected salary support lines, in the amount of $1,500,000.00;

**D. Punitive Damages:** An award of punitive damages against individual Defendants Michael E. Llamas, Marilyn M. Wilder, Jason R. Lane, and Phillip B. Journey, strictly in their individual and personal capacities, for their reckless, callous, and malicious indifference to the Plaintiff's clearly

established constitutional rights under the controlling standard of the United States Supreme Court in *Smith v. Wade*, 461 U.S. 30 (1983), in the amount of $3,000,000.00; and

**E. Fees and Costs:** An award of all reasonable litigation expenses, technological printing costs, and statutory fees pursuant to the explicit remedial channels of 42 U.S.C. § 1988.

## VI. CERTIFICATION AND SIGNATURE

Pursuant to Federal Rule of Civil Procedure 11, by signing below, I hereby certify to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that this Initial Pleading is not being presented for any improper purpose, that the constitutional claims are warranted by existing law, and that every single factual contention possesses direct, document-stamped evidentiary support within the attached public record ledger.

Respectfully submitted,

[signature] 11-3-2026

Cody Helmers, *pro se*
1730 E Winterset Cir.
Goddard Ks, 67052

CERTIFIED MAIL

9589 0710 5270 4536 6716 25

Retail

U.S. POSTAGE PAID
PM
WICHITA, KS 67276
NOV 03, 2026

67202

$21.70

RDC 01 0 Lb 14.60 Oz S2324N501982-96

FROM:

Cody Helmers
1730 E Windgeset Cir
Goddard KS 67052

TO:

US District Court
401 N Market Room 204
Wichita KS 67202

Utility Mailer
10 1/2" x 16"

ReadyPost

United States Postal Service®
VISIT US AT USPS.COM®
Label 106A, Nov 2018

MAIL